**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-2309**

---

FLOR I. ARRIAZA DE PAREDES; FRANCISCO HERNAN TEJADA LOPEZ,

        Plaintiffs – Appellants,

v.

ZEN NAILS STUDIO LLC; PHONZ NGUYEN, a/k/a Dung Nen Chay Khach; LINH NGUYEN, a/k/a Nen Giu Khach Hai Long,

        Defendants – Appellees.

-------------------------------

METROPOLITAN WASHINGTON EMPLOYMENT LAWYERS ASSOCIATION; PUBLIC JUSTICE CENTER,

        Amici Supporting Appellant.

---

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Theodore D. Chuang, District Judge. (8:20-cv-02432-TDC)

---

Argued:  January 29, 2025                      Decided:  April 15, 2025

---

Before HEYTENS and BERNER, Circuit Judges, and Elizabeth W. HANES, United States District Judge for the Eastern District of Virginia, sitting by designation.

---

Vacated and remanded by published opinion. Judge Heytens wrote the opinion, which Judges Berner and Judge Hanes joined.

---

**ARGUED:** Omar Vincent Melehy, MELEHY & ASSOCIATES LLC, Silver Spring, Maryland, for Appellants. Neil R. Lebowitz, LEBOWITZ LAW FIRM, Columbia, Maryland, for Appellee. Stephen B. Pershing, KALIJARVI, CHUZI, NEWMAN & FITCH, P.C., Washington, D.C., for Amici Curiae. **ON BRIEF:** Andrew Balashov, MELEHY & ASSOCIATES LLC, Silver Spring, Maryland; Matthew B. Kaplan, THE KAPLAN LAW FIRM, Arlington, Virginia, for Appellants. Alan R. Kabat, BERNABEI & KABAT, PLLC, Washington, D.C., for Amici Curiae.

───────────

2

TOBY HEYTENS, Circuit Judge:

After winning at trial, two plaintiffs asked a district court to award them attorney's fees. The court granted fees, but at lower hourly rates than the plaintiffs requested. We conclude the district court erred in treating the hourly rates contained in official District of Maryland guidelines as presumptively correct and higher rates as requiring special justification. We thus vacate the fee order and remand for further proceedings.

I.

In 2020, two former employees sued Zen Nails Studio LLC and its owners for violating the Fair Labor Standards Act and an analogous Maryland state law. After a five-day bench trial, the plaintiffs prevailed and were awarded roughly 60% of their requested damages. Neither the verdict nor the damages award is challenged here.

The FLSA contains a fee-shifting provision stating that "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant." 29 U.S.C. § 216(b). The plaintiffs sought $343,189.85 in fees. Without proposing a specific number, the defendants argued the court should reduce or deny the amount requested.

The district court awarded $167,115.49 in fees—just under half of what the plaintiffs sought. The court reached that figure in three steps. First, it set reasonable hourly rates for the plaintiffs' attorneys, paralegals, and paraprofessionals. Second, the court calculated the hours reasonably worked by each person. Finally, it reduced the combined figure by 35% because the plaintiffs "achieved a moderately successful outcome but not a complete victory." JA 814.

3

The plaintiffs challenge only the first step—setting reasonable hourly rates—so we describe only that portion of the parties' arguments and the district court's reasoning. The plaintiffs sought compensation ranging from $180 per hour for paralegals and paraprofessionals to $625 per hour for an attorney with 36 years of experience. The plaintiffs supported that request with briefing and evidence, including declarations and an inflation-adjusted fee matrix used by other courts to set hourly rates. The defendants countered with their own briefing and evidence, including a declaration from an attorney who practices in the relevant market.

The district court began its fee order by acknowledging that "[t]he reasonable hourly rate requirement is typically met by compensating attorneys at prevailing market rates" for "the community in which the court where the action is prosecuted sits." JA 807 (quotation marks removed). The court also described one of the plaintiff-submitted declarations as "provid[ing] support for the reasonableness of the hourly rates" they sought. JA 809.

Despite those statements, the district court adopted hourly rates for all personnel well below those the plaintiffs requested. The district court's stated reasons for choosing the rates it did all referenced a provision in its local rules captioned "Guidelines Regarding Hourly Rates." See JA 807–09 (citing D. Md. L.R. App. B (Appendix B)). The district court described that provision as "provid[ing] presumptively reasonable hourly rates keyed to an attorney's years of experience" and noted that the plaintiffs' proposed rates were all "higher than the applicable Local Rule guideline range." JA 807–08. The court acknowledged the plaintiffs' argument that their attorneys had "substantially more experience than is reflected in the experience ranges set forth in" those rules. JA 808. But

4

the court found "that the legal work conducted here was not particularly novel or complex, and it did not require skill beyond the typical case." JA 809. "Under th[o]se circumstances," the court stated it would "not approve hourly rates above those contemplated by the Local Rules." *Id*. Instead—because the ranges "have not been increased for several years"—the court selected hourly rates "at the high end of the guidelines ranges." JA 808–09.

## II.

One can "hardly think of a sphere of judicial decisionmaking in which appellate micromanagement has less to recommend it" than reviewing a district court's fee award. *Fox v. Vice*, 563 U.S. 826, 838 (2011). "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection," and "the determination of fees should not result in a second major litigation." *Id.* (quotation marks removed). The district court—not the appellate court— "has close and intimate knowledge of the efforts expended and the value of the services rendered," *Harwood v. American Airlines, Inc.*, 37 F.4th 954, 960 (4th Cir. 2022) (quotation marks removed), and "appellate courts must give substantial deference to these determinations," *Fox*, 563 U.S. at 838. We thus review the district court's fee award for abuse of discretion. See *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174 (4th Cir. 1994).

Still, "a motion to a court's discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 139 (2005) (alterations removed) (quoting *United States v. Burr*, 25 F. Cas. 30, 35 (C.C. Va. 1807) (No. 14,692d) (Marshall, C.J.)). "A trial court has wide

5

discretion" in awarding fees "when, but only when, it calls the game by the right rules," and "the appeals court must make sure that occurred." *Fox*, 563 U.S. at 838–39. Because the district court's written order applied the wrong rules here, we vacate the fee award and remand for further proceedings.

We reiterate that fee matrices can be "a useful starting point to determine fees." *Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 591 F.3d 219, 229 (4th Cir. 2009). As the district court's local rules explain, a published fee matrix can "provide practical guidance to lawyers and judges when requesting, challenging, and awarding fees" and help make fee petitions "less onerous by narrowing the debate over the range of a reasonable hourly rate in many cases." Appendix B, at 127 n.*. In addition, because courts follow "the principle of party presentation," *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020), a district court ordinarily need not consider hourly rates higher than those a fee-seeking party requests or lower than those with which the opposing party counters. The court may accept the parties' framing of the dispute before it, even if that framing has been influenced by a fee matrix.

Once a fee dispute is before it, however, a district court "may consider, but is not bound by," any matrix. *Newport News Shipbuilding*, 591 F.3d at 229. Nor may a district court, when discharging its "duty" to "calculat[e] reasonable attorney's fees," treat a fee matrix as "presumptively reasonable" and require special justification to deviate from it— even when that matrix is contained in the district court's local rules. *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1159–60 (9th Cir. 2018); accord Appendix B, at 127 n.* (stating that "[t]he factors established by case law obviously govern over" the published ranges).

6

Instead, the court must consider all relevant evidence to determine "the prevailing market rates in the relevant community," *Blum v. Stenson*, 465 U.S. 886, 895 (1984), including lawyer affidavits, fee awards in similar cases, general surveys, fee matrices, and even its "own personal knowledge," *Rum Creek Coal Sales*, 31 F.3d at 179; see *McAfee v. Boczar*, 738 F.3d 81, 91 (4th Cir. 2013); *Eastern Assoc. Coal Corp. v. Director*, *Off. of Workers' Comp. Programs*, 724 F.3d 561, 567 (4th Cir. 2013). The court may not elevate a matrix above all other types of evidence or treat a matrix as establishing a presumptive answer or range of answers.

We read the district court's fee order as falling on the impermissible side of that line. That order describes the local rules as "provid[ing] presumptively reasonable hourly rates," JA 807, and notes that the plaintiffs' requested rates all "exceed[ed]" or were "higher than the applicable Local Rules guideline range," JA 808. To be sure, the order also references the plaintiffs' evidence, their arguments about inflation, the court's assessments about the case's complexity and skill required, and the attorney's reasonable expectations. But even then, the order returns to the district court's local rules, stating that the court "will not approve hourly rates above those contemplated by the Local Rules" and finding that "the reasonable hourly rates are those at the high end of the guideline ranges set forth in the Local Rules." JA 809. The fee ranges listed in the district court's local rules thus appear to have had a substantial anchoring effect on the court's ultimate fee award. See Jon D. Hanson & Douglas A. Kysar, *Taking Behavioralism Seriously: Some Evidence of Market Manipulation*, 112 Harv. L. Rev. 1420, 1440–41 (1999) (discussing the anchoring effect).

7

That was legal error. Just as district courts "may not presume that the Guidelines range is reasonable" when sentencing a criminal defendant, *Gall v. United States*, 552 U.S. 38, 50 (2007), they may not treat court-produced fee matrices as setting a baseline from which departures are disfavored and require special justification. Because we read the district court's order as having done so, we vacate the fee award and remand for further proceedings.[*]

\*     \*     \*

We express no opinion about the appropriate hourly rates here and issue no marching orders to award more fees than the district court previously did. Instead, we reaffirm our "confidence in th[e] district court's capacity and willingness to engage in a true reconsideration that accepts and takes into account the specific concerns with the decision under review that are expressed in this opinion" and "our recognition of the continued superiority of the trial court's vantage point in" determining a reasonable fee. *James v. Jacobson*, 6 F.3d 233, 243 (4th Cir. 1993).

The fee order is vacated, and the case is remanded for further proceedings consistent

---

[*] Our conclusion that the district court gave undue weight to a single factor makes it unnecessary to consider the plaintiffs' assertion that this matrix is so outdated that it cannot be properly considered. On the one hand, appellate courts often affirm the use of inflation-updated matrices, most notably in the D.C. Circuit, where a matrix initially adopted in the 1980s remains frequently cited. See, *e.g.*, *Service Emps. Int'l Union Loc. 32BJ v. Preeminent Protective Servs. Inc.*, 997 F.3d 1217, 1223 (D.C. Cir. 2021). Still, the longer a matrix goes without an update, the odds that it has much to say about today's prevailing market rates decrease and the chances that its use—even properly weighted—will constitute an abuse of discretion increase. Given that this matrix has remained unchanged for more than a decade, we urge the district court to give this matter its prompt attention.

8

with this opinion.

*SO ORDERED*